UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JON CLARK, Individually and For Others Similarly Situated,<br><br>v.<br><br>SABLE PERMIAN RESOURCES, LLC | Case No. 4:20-cv-1286<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jon Clark (Clark) brings this lawsuit to recover unpaid overtime wages and other damages from Sable Permian Resources, LLC (Sable) under the Fair Labor Standards Act (FLSA). 29 U.S.C. § 201 *et seq*.

2. Clark worked for Sable as a Completions Engineer and Petroleum Engineer.

3. Clark and the Putative Class Members (defined below) regularly worked more than 40 hours a week.

4. But Sable did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, Sable classified Clark and other similarly situated workers as independent contractors and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6. Sable never paid Clark or the Putative Class Members a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10. Specifically, Clark worked for Sable in and around Houston, Texas. Clark regularly worked overtime for Sable in and around Houston, Texas. Despite regularly working overtime, Sable paid him a day rate with no overtime for the work he did for Sable in and around Houston, Texas.

11. Further, Sable maintains its headquarters in Houston, Texas.

## PARTIES

12. Clark worked for Sable as a Completions Engineer and Petroleum Engineer from approximately October 2018 until January 2019.

13. Throughout his employment, Clark was paid a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay plan") and was classified as an independent contractor.

14. In fact, Clark was Sable' employee.

15. Clark's consent to be a party plaintiff is attached as Exhibit 1.

16. Clark brings a FLSA collective action on behalf of himself and all other Sable workers who were classified as independent contractors and paid according to Sable' day rate pay plan.

17. Sable paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

18. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Sable who were classified as independent contractors and paid according to Sable's day rate pay plan at any time in the last 3 years (the "Day Rate Workers").**

19. Sable may be served with process by serving its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.**

**FLSA COVERAGE**

20. At all relevant times, Sable has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. At all relevant times, Sable has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. At all relevant times, Sable has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. At all relevant times, Sable has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

24. In each of the past 3 years, Sable's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

25. At all relevant times, Clark and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

26. Sable treated Clark and the Day Rate Workers as employees and uniformly dictated the pay practices it applied to Clark and the Day Rate Workers.

27. Sable' misclassification of Clark and the Day Rate Workers as independent contractors does not alter their status as an employee for purposes of the FLSA.

**FACTUAL ALLEGATIONS**

28. Sable's "operations are concentrated on the development of current assets, and the acquisition, development, and optimization of other oil and natural gas properties in the Permian Basin,

specifically the Wolfcamp Shale Play in the core of the Southern Midland Basin[,] …operating 563 producing horizontal wells."[1]

29. To complete its business objectives, Sable hires personnel, such as Clark, to perform oilfield services.

30. Sable does not hire these workers on a project-by-project basis.

31. Rather, Sable hires and treats these workers just like regular, even if sometimes short-term, employees.

32. Many of these individuals worked for Sable on a day rate basis (without overtime pay).

33. These workers make up the proposed collective of Day Rate Workers.

34. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

35. For example, Clark worked for Sable as a Completions Engineer and Petroleum Engineer from approximately October 2018 until January 2019.

36. Throughout his employment with Sable, Sable paid him on a day rate basis.

37. Clark and the Day Rate Workers work for Sable under its day rate pay plan.

38. Clark and the Day Rate Workers do not receive a salary in accordance with the FLSA.

39. If Clark and the Day Rate Workers did not work, they did not get paid.

40. Clark and the Day Rate Workers do not receive overtime pay.

41. This is despite the fact Clark and the Day Rate Workers often work 10 hours a day, for up at least 5 days a week, for weeks at a time.

42. Although he typically worked at least 5 days a week, for 10 hours a day, Clark did not receive any overtime pay.

---

[1] https://www.sableres.com/operations (last visited April 9, 2020).

43. Clark and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

44. Clark's work schedule is typical of the Day Rate Workers.

45. Sable knows Clark and the Day Rate Workers work for 10 hours a day, for at least 5 days a week.

46. Sable's records reflect the fact that Clark and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

47. Sable does not pay Clark or the Day Rate Workers overtime for hours worked in excess of 40 in any of those weeks.

48. Instead, Sable pays Clark and the Day Rate Workers on a day rate basis.

49. Clark and the Day Rate Workers are not employed on a salary basis.

50. Clark and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Sable irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

51. Sable's policy of paying Clark and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Clark and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

52. Sable knew Clark and the Day Rate Workers worked more than 40 hours in a week.

53. Sable and/or its clients control Clark and the Day Rate Workers' work.

54. Sable requires Clark and the Day Rate Workers to follow Sable and/or its clients' policies and procedures.

55. Clark and the Day Rate Workers' work must adhere to the quality standards put in place by Sable and/or its clients.

56. Clark and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

57. As a Completions Engineer and Petroleum Engineer, Clark attended meetings, helped draft project budgets, forecast operation execution timelines, and visiting projects out in the oilfield to ensure the project is completed in accordance with Sable's (or its clients') specifications.

58. Without the job performed by Clark and the Day Rate Workers, Sable would not be able to complete its business objectives.

59. Clark and the Day Rate Workers relied on Sable for work and compensation.

60. Clark and the Day Rate Workers worked in accordance with the schedule set by Sable and/or its clients.

61. Clark and the Day Rate Workers cannot subcontract out the work they are assigned by Sable.

62. Clark and the Day Rate Workers must follow Sable and/or its clients' policies and procedures.

63. Clark and the Day Rate Workers' work must adhere to the quality standards put in place by Sable and/or its clients.

64. Clark and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

65. Clark and the Day Rate Workers did not possess any specialized or unique skill set other than that maintained by all other workers in their respective positions.

66. Clark and the Day Rate Workers did not market their services while employed by Sable.

67. Clark and the Day Rate Workers worked exclusively for Sable during the relevant period.

68. Clark and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

69. Sable and/or its clients set Clark and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Sable.

70. At all relevant times, Sable and/or its clients maintained control, oversight, and direction of Clark and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

71. Sable knew Clark, and other Day Rate Workers, worked more than 40 hours in a week.

72. Sable knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA's overtime provisions.

73. Nonetheless, Sable failed to pay Clark and the Day Rate Workers overtime.

74. Sable knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Frost and the Day Rate Workers of overtime compensation in violation of the FLSA.

75. Sable's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

76. Sable willfully violated the FLSA.

## CAUSE OF ACTION
## FLSA VIOLATION

77. Sable's day rate pay plan violates the FLSA because Clark and the other Day Rate Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

78. Sable knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

79. Sable's failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

80. Nor was Sable's decision not to pay its Day Rate Workers overtime made in good faith.

81. Accordingly, Clark and the Day Rate Workers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

82. Clark brings this claim as a collective action under the FLSA.

83. The Day Rate Workers were victimized by Sable's day rate pay plan which is in willful violation of the FLSA.

84. Other Day Rate Workers worked with Clark and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

85. Based on his experiences with Sable, Clark is aware that Sable's illegal practices were imposed on the Day Rate Workers.

86. The Day Rate Workers are similarly situated in all relevant respects.

87. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

88. The illegal day rate pay plan Sable imposed on Clark was imposed on all Day Rate Workers.

89. Like Clark, the other Day Rate Workers are denied overtime when they work more than 40 hours per week.

90. The overtime owed to Clark and the Day Rate Workers will be calculated using the same records and the same formula.

91. Clark's experiences are therefore typical of the experiences of the Day Rate Workers.

92. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

93. Clark has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent collective treatment.

94. Like all Day Rate Workers, Clark has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

95. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent a collective action, many Day Rate Workers will not obtain redress of their injuries, and Sable will reap the unjust benefits of violating the FLSA.

97. Further, even if some of the Day Rate Workers could afford individual litigation against Sable, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

99. The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

   a. Whether Sable employed the Day Rate Workers within the meaning of the applicable state and federal statutes, including the FLSA;

   b. Whether Sable's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

   c. Whether Sable's violation of the FLSA was willful; and

   d. Whether Sable's illegal pay practice applied to the Day Rate Workers.

101. Clark and the Day Rate Workers sustained damages arising out of Sable's illegal and uniform employment policy.

102. Clark knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

103. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Sable's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

104. Consistent with Sable's illegal day rate policy, Clark and the Day Rate Workers were not paid overtime when they worked more than 40 hours in a workweek.

105. As part of their regular business practices, Sable intentionally, willfully, and repeatedly applied its day rate pay plan to Clark and the Day Rate Workers.

106. Sable's illegal day rate pay plan deprived Clark and the Day Rate Workers of the premium overtime wages they are owed under federal law.

107. Sable is aware, or should have been aware, that the FLSA required it to pay Clark and the Day Rate Workers overtime premiums for hours worked in excess of 40 in a workweek.

108. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109. The other Day Rate Workers are known to Sable, are readily identifiable, and can be located through Sable's records.

### JURY DEMAND

Clark demands a trial by jury.

### RELIEF SOUGHT

Wherefore, Clark prays for:

(a) an order allowing Clark's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Workers pursuant to § 216(b) of the FLSA;

(b) judgment finding Sable in violation of the FLSA;

(c) judgment finding Sable liable to Clark and the Day Rate Workers for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding Clark and the Day Rate Workers reasonable attorneys' fees and costs of this action;

(e) judgment awarding Clark and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**Taylor A. Jones**
Texas Bar No. 24107823
Federal ID No. 3348814
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**